NICANDRO MUNOZ AND VICTOR RODRIGUEZ v. THE STATE.

No. 14281. Delivered April 22, 1931.

The opinion states the case.

*F. G. Garza,* of McAllen, for appellants.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for murder, punishment being assessed at death.

Appellants are convicted of killing Bert Ellison, a Federal Customs Officer. On the night of the 9th of October, 1930, a dance called a "baile" was in progress. Deceased and other officers were in the vicinity for the purpose of ascertaining if any violations of the law were being committed. Deceased and one Clark, another officer, separated, following different trails into the brush. Within a short time after they had separated some eight or more shots were heard. Clark called deceased's name but received no response. Coy, another officer, joined Clark and they found Ellison's body. His pistol holster was in his pocket, but the

belt and pistol were gone, as was also a flashlight which he had been using. Some empty 32 caliber shells were found near the body. Deceased had been shot a number of times. No necessity arises for describing the various wounds.

The two appellants Munoz and Victor Rodriguez were jointly indicted with Jose Maria Lopez. Appellants asked a severance from Lopez, which was granted. Appellants were jointly tried and each entered a plea of guilty, after proper admonition from the court. The State introduced in evidence a written confession from each appellant, in which the circumstances leading up to the killing of Ellison and of the killing itself are fully stated. We condense the salient facts. A short time before the killing the wife of Margarito Rodriguez had been deported to Mexico. This had angered Margarito especially against the officers instrumental in bringing about the deportation, but seems to have extended in general to all officers. Margarito had communicated his desire to kill officers to his brother Victor, also to Munoz and Lopez. It is not disclosed whether deceased was in any way connected with the proceeding which resulted in sending the wife to Mexico. On the night of the homicide Lopez, Munoz and Victor Rodriguez and Margarito Rodriguez were in the brush some two hundred yards from where the "baile" was in progress. They knew officers were in the vicinity. They stationed themselves on a trail; Margarito said to the others they would kill the first officer who came along there that night. He directed that Lopez and Munoz should grab the officer by each arm and that he and Victor would shoot him. Ellison was the unfortunate officer to first pass; according to the confessions the murder was carried out exactly as had been planned. When the officer was caught from behind by Lopez and Munoz he dropped his flashlight and tried to draw his gun, but was prevented from doing so by those holding him, and was shot to death by Margarito and Victor, each of whom used a 32 caliber pistol. They then took the officer's pistol, belt and flashlight and left the scene of the killing. The next day Victor and Margarito learned that officers were looking for them; they sought to escape and when about to be overtaken they commenced a gun battle with the officers, in which Margarito was killed and Victor wounded.

No bills of exception are brought forward. Appellants filed a motion for new trial in which among other things they aver that the testimony given by Santiago Rodriguez, a witness for the State, was untrue. Santiago was a brother of Margarito and Victor. Attached to the motion is the affidavit of Santiago recanting his testimony as given on the trial. His testimony in substance had been that he was near the scene of the killing and recognized Munoz and Lopez and heard Munoz say "Now, Jose Maria," and saw them catch someone by the arms and then heard some shooting; that he also after the shooting recognized his

brother Margarito as one of those present, but did not recognize his brother Victor as one of the parties, but learned later that he was also present. In his affidavit Santiago says he was not at the scene of the killing but was at the "baile"; that he heard the shots and later was told by Munoz to say that he was present when Ellison was killed; that his testimony as to what he saw and heard at the time of the killing was not true, but that he was told by the officers it would be best for him to say he was present. The State controverted the things averred in the motion and the court's order overruling it recites that he heard evidence thereon, and concluded the motion should be overruled. No evidence heard on the motion is brought before us. We must therefore presume it supported the court's ruling.

Even if the affidavit of Santiago should be given effect as speaking the truth it only goes to the point that he knew nothing about·the killing. It contains no affirmative statements of benefit to either of appellants. In view of their pleas of guilty, their confessions in detail as to the crime, the evidence of each of them given on the trial that they had not been induced to make their confessions by any promises or inducements from anyone, and all the other evidence leads us to the conclusion that no error appears in the record which would authorize or justify this court in disturbing the verdict.

The judgment is afirmed.

*Affirmed.*